## Case No. 11,831.

### RIGGS v. SWANN et al.

### [3 Cranch, C. C. 183.] [1]

Circuit Court, District of Columbia. Nov., 1827.[2]

BANKS—ARTICLES OF ASSOCIATION — HOLDERS OF NOTE—LIABILITY OF STOCKHOLDERS—ISSUE OF NOTES—EQUITY—PARTIES.

1. The stockholders of an unincorporated banking company are individually liable in equity to the holders of the notes of the company, issued while they were stockholders, notwithstanding an article of their association, declares that the joint stock or property of the company, should alone be responsible, for the debts and

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 2 Pet. (27 U. S.) 482.]

engagements of the company: and that no person who might deal with the company, or to whom they should become indebted, should, on any pretence whatever, have recourse against the separate property of any present or future member of the company, or against their persons, further than might be necessary to secure the faithful application of the funds thereof, to the purposes to which, by those articles they were liable.

2. The date of each note is primâ facie evidence of the time it was issued.

3. The holder may have relief in equity, to the full nominal amount of the notes held by him, without showing that he gave any value therefor.

4. Each stockholder is liable to the full extent of all the notes held by the plaintiff, and issued while he was a stockholder.

5. It is not necessary that the members of the company named in the bill, but not served with process to appear, should be parties to the suit, although the bill as to them should be taken for confessed.

Bill in equity [by Romolus Riggs] to charge the stockholders in the Merchants Bank of Alexandria, personally, for the notes of the bank. The bill states that John Anderson and sixty-one other persons, who are named in the bill and prayed to be made defendants, entered into an association or copartnership, which was commonly known by the name of the Merchants Bank of Alexandria. That they entered into certain articles of copartnership or association, a copy of which was annexed to the bill, and made part thereof. That they carried on the business of banking until May, 1816; when, either by mismanagement, or by a fraudulent issue of paper beyond their means of payment, they became embarrassed and stopped. That sundry notes or bills issued and put in circulation by the bank, amounting to $20,000, "have regularly come to the possession of" the plaintiff, "no part of which have as yet been paid," nor does he believe that any provision has been made for the same; except, that subsequent to the failure of the bank, namely, on the 19th of December, 1816, a deed, a copy of which is exhibited as part of the bill, was executed by Peter Saunders and others, as president and directors of the Merchants Bank, by which all the property, real and personal, of the bank, was conveyed to Thomas Swann, Colin Auld, and E. J. Lee, (who are made defendants,) in trust to pay "the balances due to sundry banks in the city of Baltimore and elsewhere," and the residue to be equally divided among all the creditors of the bank pari passu. That under that clause of the trust, sundry banks, which are named in the bill, and made defendants, have claimed priority of payment. The plaintiff denies the power of the president and directors to bind the funds of the bank by such a deed, or to create any such preference after the bank had failed and the institution was dissolved; and denies that the description of the preferred banks, is sufficiently definite, to give them the preference. He states that the funds of the bank are in-

sufficient to pay all the debts without resorting to the separate property of the individual members of the association, who deny all responsibility for the debts of the bank. He prays an account of the funds in the hands of the trustees, and of the debts due by the bank; and that the deed may be vacated; and that the plaintiff's claim may be paid out of the joint funds as far as they will go; and that the balance may be decreed to be paid by the individual members of the association; and for general relief.

The eleventh article of the articles of association, declares that every member, when he ceases to be a stockholder, shall cease to be one of the company. The fifteenth article declares, that "it is expressly and explicitly declared to be the object and intention of the persons who associate under the style and firm of 'The Merchants Bank of Alexandria' that the joint stock or property of the said company, (exclusive of the dividends to be made in the manner before mentioned,) shall alone be responsible for the debts and engagements of the said company; and that no person who may deal with the company, or to whom they may, or shall in anywise, become indebted, shall, on any pretence whatever, have recourse against the separate property of any present or future member of this company, or against their persons, further than may be necessary to secure the faithful application of the funds thereof, to the purposes to which by these presents they are liable. But all persons accepting any bond, bill, or note, or contract of this company, signed by the president, and countersigned or attested by the cashier of the company for the time being, or dealing with it in any other manner whatever, thereby respectively give credit to the joint stock or property, of the said company, and thereby respectively disavow having recourse, on any pretence whatever, to the persons or separate property, of any present or future member of this company, except as above excepted." By the articles of association, the joint stock might consist of one million of dollars, divided into 10,000 shares of $100 each; of which ten dollars a share were to be paid at the time of subscribing, and the residue when called for by the directors, so that not more than five dollars on each share should be called for at any one time, excepting the second instalment, which might be ten dollars a share. The notes were in the common form of banknotes but payable to C. McKnight or order, on demand, and by him indorsed in blank.

Twenty-four of the defendants answered. One of them, Joseph Mandeville, stated that he had not, for a long time, owned any stock in the bank, and did not believe that the notes now claimed by the plaintiff, were issued while he was a stockholder. He did not admit them to be genuine notes of the bank, (not having seen them,) nor that payment had ever been demanded of the bank. He believed they had been bought up by the

plaintiff, on speculation, after the failure of the bank, and relied on the fifteenth article of association. Some of the defendants denied that they ever were stockholders, and others averred that their names had been used without their consent. Some admitted that they had been stockholders for a short time, but could not say when.

The following facts were agreed by the parties:

1. That the articles of association were repeatedly published in the Alexandria newspapers before the commencement of the operations of the bank under the articles.

2. That the fifteenth article was printed, and copies of it pasted in the bank-books of the customers and dealers at the bank, and posted in a public part of the banking-room, exposed to the view of all persons entering the said bank.

3. That the bank stopped payment and failed, about the 11th of May, 1816.

4. That C. McKnight, to whose order the notes in question were made payable, was, at the time and times of issuing the same, a clerk in the said bank; and that the notes were made payable to his order for the purpose of being indorsed by him in blank, and so thrown into circulation, and passed from hand to hand, as bank-notes, without any value or transaction passing between him and the said bank.

5. That the plaintiff always resided in Georgetown, District of Columbia, and frequently visited Alexandria, but was not a customer or dealer with the said bank.

6. That the said bank-notes are in the following form:—

(5)          ⎰ Vignette ⎱ (5)
    Capital one ⎱ Vignette ⎰ million dollars.
No. 1701.                         No. 1701.
. The Merchants Bank of Alexandria, promises to pay to C. McKnight or order, on demand, five dollars.  Alexandria, July 19th, 1815.
C.                         F. Marsteller, President.
James S. Scott, Cashier.

It appears by the reports of the trustees on the 15th of December, 1820, and 7th of May, 1824, that all the available funds of the bank, were exhausted in expenses of the trust. And by the master commissioner's report, the plaintiff's claim appears to be $21,661.25 upon notes of the bank, dated at various times from May 25, 1815, to March 2, 1816, inclusive; the greater part in 1815. By the master's report of December 3, 1825, it appears that 10,000 shares, amounting to one million of dollars, were subscribed for on the 23d of May, 1815, payable by instalments when called for. The instalments called for, including ten dollars a share at the time of subscribing, amounted to $250,000; of which sum there remains due from the stockholders the sum of $68,775; the sum of $183,550 having been paid either in money, or by stock-notes discounted for that purpose; so that there remains due from the stockholders, in order to complete the contemplated capital of one million of dollars, the sum $816,450;

of which the sum of $360,825 is due from original subscribers and $455,625 from transferees.

The cause was set for hearing on the bill, answers, replications, depositions, exhibits, reports, and the admissions of the parties. The case was argued at November term, 1826, by Mr. Taylor, for plaintiff, and by Mr. Hodgson, Mr. Swann, and Mr. Jones, for defendants.

Mr. Taylor, for plaintiff.

The 1st question is whether the stockholders are individually liable for the notes of the bank. There is no evidence that the plaintiff had notice of the articles of association. There was no reference to them upon the face of the notes. Individual stockholders are liable to the public, whatever may be the agreement among the stockholders themselves. Rex v. Dodd, 9 East, 516, 525–527; Waugh v. Carver, 2 H. Bl. 235; Gow, Partn. pp. 4, 5, 9, 17, 18; Ensign v. Wands, 1 Johns. Cas. 171.

Mr. Hodgson, Mr. Swann, and Mr. Jones, for defendants, contended: 1st. That the notes were void, because issued contrary to the law of Virginia, in force in the county of Alexandria, which declares it to be not lawful for any person to offer in payment a private bank-bill or note for money payable to bearer. 2d. That, if not void, the stockholders are not individually liable.

1. Upon the first point they cited Bartlett v. Vinor, Carth. 252; 1 Pow. Cont. 163–167, etc.; Biggs v. Lawrence, 3 Term R. 454. The act of Virginia of December 2, 1785, § 1, p. 16, which is in these words: "Be it enacted by the general assembly, that it shall not be lawful for any person to offer in payment a private bank-bill or note for money payable to bearer; and whoever shall offend herein shall not only forfeit to the informer ten times the value of the sum mentioned in such bill or note, but may be apprehended by warrant from a justice, and upon due proof of the fact made to him, or upon his own acknowledgment thereof, be bound to the good behavior; or if he afterwards offend in the like manner, it shall be deemed a breach of the recognizance." 1 Fonbl. 36; Holman v. Johnson, Cowp. 343; 1 Pow. Cont. 174; Ex parte Mather, 3 Ves. 373; St. John v. St. John, 11 Ves. 536; Morris v. McCullock, 2 Amb. 432; Hunt v. Knickerbacker, 5 Johns. 327; Denniston v. Cook, 12 Johns. 376; Hannay v. Eve, 3 Cranch [7 U. S.] 242–247; Wilson v. Spencer, 1 Rand. [Va.] 76.

2. If the notes are not void as being in effect payable to bearer, in violation of the law of Virginia, yet the stockholders are not individually liable. The plaintiff has produced and offered the articles of association in evidence, as part of his title. He claims under them, and is therefore bound by them. In proving a partnership, he has proved a special qualified partnership. The articles are not merely an agreement among the stockholders, and binding upon them only, but

they enter into and bind all persons dealing with the bank with notice of the articles. Such publicity was given to the articles, that there can be no doubt that the plaintiff had notice of them before he purchased the notes in question. But if the stockholders should be personally liable, to what extent are they liable? Is each liable for all the debts of the bank? Is an original stockholder liable for notes issued after he sold out his shares? Is the purchaser of shares liable for notes issued before he became a stockholder? But the bill does not state a case of equity. If the plaintiff has a right to recover, it is at law, not in equity.

Mr. Taylor, in reply, was stopped by THE COURT (THRUSTON, Circuit Judge, absent), as to the question of equitable jurisdiction, being of opinion that the trust-fund, the partnership. and the other circumstances, gave jurisdiction to a court of equity. The act of Virginia, he observed, does not apply to notes payable to order, although indorsed in blank, and such has been the universal understanding in that state; so that on the 24th of February, 1816, its legislature passed a law to make void all notes issued by unchartered banks. Besides, the penalty of the act is not for issuing, but for offering in payment, any such note. The offence is committed (if committed,) by the indorser, not by the bank. The answers of the defendants admit that the plaintiff is entitled to payment out of the joint funds. What are the joint funds? The capital subscribed? Or the capital paid in? Or the capital called for by the instalments? The capital subscribed was one million of dollars; and the stockholders are bound to make up the joint funds to that amount, if necessary for the discharge of the obligations of the bank. The instalments called for amount to $250,000. To that extent at least they are liable. They are bound, at least, for the damage sustained by the fraud of their agents, who held out to the world a capital of a million of dollars. Salmon v. Hamborough Co., 2 Vern. 396, note.

Mr. Taylor admitted that the plaintiff had not a right to call on a stockholder, who was not such at the time the notes were issued; but contended that the date of the notes was primâ facie evidence of the time of issuing them, and of the time when the debt accrued.

The judges present at the first argument not being able to agree upon a decree, the cause was argued again at November term, 1827, by Mr. Taylor and Mr. Key for the plaintiff, and by Mr. Swann and Mr. Jones for the defendants. This argument was substantially the same as the first, with the following additional authorities cited by Mr. Swann. upon the question of illegality of the notes: Wookey v. Pole, 4 Barn. & Ald. 6–8; Collins v. Martin, 1 Bos. & P. 649; Miller v. Race, 1 Burrows, 452; Grant v. Vaughan, 3 Burrows, 1516; Peacock v. Rhodes, 2 Doug. 636; Patton v. Nicholson, 3 Wheat. [17 U. S.] 204, 207; Belding v. Pitkin, 2 N. Y. Term R.

(2 Caines) 147; Edie v. East India Co., 1 W. Bl. 298. And upon the question of the individual responsibility, Izett v. Mountain, 4 East, 371.

THE COURT (CRANCH, Chief Judge, contra) were of opinion that the defendants were personally and individually liable.

CRANCH. Chief Judge. The 1st question is, has the plaintiff made out a case for equitable relief, either against the joint funds of the association, or against the individual stockholders? The plaintiff does not say that he is interested in the notes which he holds, nor that he paid any value for them; but simply says they regularly came to his possession. and have not been paid. Does this bare possession entitle him to relief in equity. Would it entitle him to recover at law? I am inclined to think it would. If he has a legal right to recover judgment at law. and, by reason of the partnership, or of the deed of assignment of the joint funds to the trustees, he cannot obtain the fruit of his judgment, has he a right to resort to a court of equity in the first instance, or should he not proceed to judgment at law? If it be apparent that he cannot get satisfaction at law, and that he may in equity, I think he may resort to equity first. If it were clear that the plaintiff had a complete remedy at law against the individual members of the association, without regard to the disposition made of the joint funds, I should say he had no remedy in equity. But if there be joint funds, a court of equity would, perhaps, under the circumstances of this case, restrain the plaintiff from proceeding at law against the individual property of the stockholders, until it is ascertained that the joint funds were exhausted. By "the circumstances of this case" I mean the declaration by the copartners that the joint funds only should be liable for the joint debts. If that declaration were published. in such a manner as to render it probable that the dealers with the bank, and all who should receive its notes, would have notice of it, I think the stockholders have a right, in equity, to require that the plaintiff should, at least, look to the joint funds first. If such be their rights, and the plaintiff chooses to resort to a court of equity, I think it does not become the defendants to object to his resorting to that forum, in the first instance. There was apparently a trust-fund, of which the plaintiff could not avail himself at law; but in equity he may compel the trustees to execute the trust. This alone would be a good ground to support the jurisdiction of the court of equity.

But is the plaintiff entitled to relief, in equity, against the individual persons and property of the stockholders? If the court has jurisdiction of the cause on one ground, it must proceed to give the plaintiff all the relief to which he is entitled, although the ultimate relief be such as he might, perhaps,

have obtained at law. The plaintiff had a right to call on the trustees to account for the joint funds. They have done so by their reports, which appear to have been received as their answer; and it appears that all the funds have been exhausted by the expenses of the trust. The question then occurs, is the plaintiff entitled to a personal decree against the individual stockholders? In the ordinary case of a general partnership, he would be. But it is said that the publication of the 15th article of association makes this case an exception to the general rule; and that the publication was made in such a manner that the plaintiff must be presumed to have known the article at the time of his receiving the notes; and, if he did know it, he is bound by it, because it then became part of the agreement between him and the stockholders. This principle appears to me to be correct; and I think the publication of the articles was such as to raise the presumption that the plaintiff had notice of them when he received the notes, especially as he has produced these articles and made them part of his bill; and that by receiving them with that notice he agreed to look only to the joint funds. The creditors of the bank, by those articles, were not, "on any pretence whatever, to have recourse against the separate property of any present or future member of the company, or against their persons, further than might be necessary to secure the faithful application of the funds thereof to the purposes to which, by those articles, they were liable." Of what were those funds to consist? Of the joint stock which was actually raised, and of its profits, and of the debts due to the bank. What amount of stock was raised? By the 1st article of the association it is said that "the capital stock of said company may consist of one million of dollars, divided into shares of 100 dollars each, to be paid as follows: ten dollars on each share at the time of subscribing; the president and directors may call for ten dollars more upon each share in sixty days thereafter, giving thirty days' notice thereof; the remainder at such times and in such sums as the president and directors may order," upon thirty days' notice, and not exceeding five dollars at any one time. By the 13th article, "if any stockholder should fail to pay up the several instalments on his stock as the same may become due, his dividend upon all such instalments as he shall have previously paid shall cease as to him," and shall remain to the use of the company. And by the 11th article the shares were transferable, and every stockholder, whether by original subscription or transfer, was to be considered a member of the association, and, upon ceasing to be a stockholder, should cease to be a member. The amount of stock actually called for, including what was paid at the time of subscribing, was $250,000, being $25 on each share. Of that sum $183,550 have been paid

either in money, or stock-notes discounted for that purpose; and there remain due from the stockholders, $68,775. These delinquent stockholders were the debtors of the bank to that extent; and the right of the bank to compel payment was assigned to the trustees with the other effects of the bank. Are the other stockholders bound to make good this delinquency to the creditors of the bank? I think not. By the articles of association, it is evident that they did not engage to do more than pay their subscriptions when called for, and to see that the actual and available funds of the bank were faithfully applied. By these articles the plaintiff is bound in consequence of his presumed notice of them, at the time of receiving the notes; and he cannot call upon the stockholders to do more than, by those articles, they engaged to do. The available funds have all been assigned to the trustees, and they have accounted for them. I am therefore of opinion: 1. That the plaintiff would have a right in equity to proceed against the joint funds, if there were any. 2. That there are no joint funds in the hands of the defendants. 3. That the individual stockholders are not liable beyond their subscriptions. 4. Nor beyond the instalments called for. 5. Nor to make good the delinquencies of the other stockholders. 6. And that the bill ought to be dismissed with costs.

The bill had been regularly taken for confessed, against such of the defendants as had been served with process to appear, and who had not answered; but no order of publication had been taken against the absent defendants. Some of the original defendants had died, and the proceedings were not revived against their representatives.

On the 5th of December, 1827, THE COURT (CRANCH, Chief Judge, contra) made the following decree: "This cause coming on to be heard upon the bill, answers, depositions and reports, and the arguments of counsel being heard, it is thereupon considered by the court, and by the authority thereof ordered, adjudged, and decreed, this 5th day of December, A. D. 1827: That inasmuch as it appears to the court, from the reports and evidence in the cause, that there are no funds, in the hands of the trustees, Thomas Swann, Edmund J. Lee, and Colin Auld, mentioned in the said bill, arising from the sales made under the former order of the court in this cause to be paid or distributed to the complainant or other creditors, as to the said defendants, the said trustees, the bill of the complainant should be dismissed, and it is accordingly hereby so decreed. And it is hereby further ordered and decreed, that the following named defendants, Joseph Mandeville, John Jackson, Daniel Somers, James S. Scott, Alexander Moore, Thomas Semmes, Thomas Mount, Hugh Carolin, James R. Riddle, and Benjamin Baden, pay to the complainant, the

sum of $20,000 with interest thereon, from the 1st January, 1818. and costs. And it appearing to the court that, of the sum reported to be due to the complainant, the notes of the said Merchants Bank to the extent of $1990 only had been issued during the time the said Carolin continued to be a member; and $1145 only had been issued during the time the said Benjamin Baden was a member, the above decree as to them, may be discharged by their respective payments of the said sums of money and costs. And as to all the other defendants in the said bill of complaint named, it appearing to the court that they are, either not served with process to appear in said cause, or, where served with process, not charged by any evidence on the part of said complainant, the bill of the complainant is hereby decreed to be dismissed with their costs."

Upon an appeal to the supreme court of the United States, this decree. was reversed, for error in dismissing the bill against the defendants, upon whom process was not served, and also against the defendants, against whom the bill was taken for confessed; and in not requiring the suit to be revived against the personal representatives of those parties who were served with process, and died during the pendency of the said suit, who were known and might have been brought before the court. 2 Pet. [27 U. S.] 482.